## STATE OF MISSOURI, Respondent, v. HENRY BROEDER et al., Appellants.

### St. Louis Court of Appeals, November 5, 1901.

1. **Beer Inspection Act:** STATUTORY CONSTRUCTION: CRIMINAL LAW: STATE BEER INSPECTOR. Section 10 of the Beer Inspection Act, approved May 4, 1899, creates three distinct and separate offenses. The first may be committed by a brewer or producer of malt liquors who sells the same within the State without causing it to be first inspected by the State inspector; second, by a person selling any beer, in this State contained in packages which do not have upon them the certificate of the State inspector, certifying that the beer contained in the package has been inspected; third, by **any**

State v. Broeder.

person who, after having disposed of the contents of a package upon which a State inspector's certificate has been placed, shall fail to destroy such certificate.

2. ——: ——: MANUFACTURER OF BEER: DUTIES OF. And by section 3 of said act it is made the duty of a manufacturer or brewer of beer to cause the same to be inspected by the State inspector before selling it in this State.

3. ——: ——: INFORMATION, ALLEGATIONS OF. In the case at bar, the information does not allege that the defendant was a brewer, or that he produced the beer contained in the package which he is alleged to have sold. It alleges that the package did not then and there "at the time and place of sale" have upon it the label and certificate of the State inspector of beer, certifying that said beer had then and there been inspected. These allegations are not sufficient as they do not negative, in direct terms, the fact that the package did not have upon it the official certificate of the State inspector.

4. ——: ——: INFORMATION, SUFFICIENCY OF. An information must bring the accused strictly and certainly within the terms of the offense described in the statutes, and should leave nothing to conjecture or inference.

5. ——: ——: SURPLUSAGE. "Then and there" are descriptive words in an information. In the case at bar, the words "then and there" at the conclusion of the charging clause in the information can not be rejected as surplusage for the reason that they are descriptive of both time and place when and where it is alleged the beer should have been inspected and labeled, and go to the substance of the offense.

6. ——: ——. In the case at bar it was not necessary that the information should negative the fact that the beer was sold for exportation.

7. ——: CRIMINAL PROCEDURE: AMENDMENT OF INFORMATION: STATUTORY CONSTRUCTION: STATUTE OF JEOFAILS. Under the provisions of section 2481, Revised Statutes 1899, the right to amend an information can not be restricted to such defects as would be cured by the statute of jeofails, after verdict, but exists even if the information failed to state any offense, if it can be clearly gathered from what has been stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute.

State v. Broeder.

Appeal from Montgomery Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

REVERSED AND REMANDED *(with directions).*

### STATEMENT OF THE CASE.

On the third day of May, 1900, the prosecuting attorney, filed in the circuit court of Montgomery county an information of which the following are the material parts:

"State of Missouri, Plaintiff,
        "v.        No. 3.
"Henry Broeder, Adolphus Busch, Eugene Muchlemann, E. S. Clauss and Anheuser-Busch Brewing Association, Defendants.

"That one Henry Broeder, on or about the first day of May, 1900, at and in the county of Montgomery, in the State of Missouri, did then and there unlawfully and willfully sell for the price of two dollars to one Hiram Barnes, eight gallons of beer, which said beer was then and there contained in a certain package, to-wit, a certain vessel in which beer is usually placed for sale, commonly called one-fourth barrel or keg, containing eight gallons of beer, brewed and manufactured in the State of Missouri, which said package containing said beer so sold as aforesaid did not then and there at the time of the said sale thereof have placed upon said package the label and certificate of the State inspector of beer and malt products of the State of Missouri, certifying that said beer contained in said package (or one-fourth barrel) had then and there been inspected, and made from wholesome ingredients, to-wit, made from pure hops, or pure extract of hops or pure barley, malt, or wholesome yeast

State v. Broeder.

or rice, against the peace and dignity of the State."

At the May term, 1901, of the circuit court the defendants filed their motion to quash said information, which motion was by the court overruled. The cause was dismissed as to all of the defendants except Henry Broeder, who entered his plea of not guilty. The issues were submitted to the court sitting as a jury and the following statement of facts was read in evidence, to-wit:

"1.   This agreed statement of facts is to be used in case No. 1, against the above-named defendants, and in all other cases that are tried against the above-named defendants in the circuit court of Montgomery county.

"2.   This prosecution is for an alleged violation of the act entitled 'An act creating the office of inspector of beer and malt liquors in the State and providing for the inspection of beer and malt liquors manufactured and sold in this State,' approved May 4, 1899, and if valid, went into effect August 20, 1899.

"3.   There are and have been in the State of Missouri for more than a year last past, twenty-five breweries owned and kept by persons and business corporations engaged in manufacturing or brewing beer within this State, for the purpose of offering the same for sale.

"4.   Said persons and corporations manufacture annually in this State not less than 2,250,000 barrels of beer of 31 gallons each: of the quantity manufactured 1,275,000 barrels of 31 gallons each are sold in Missouri, and 975,000 barrels are exported: that the average net price or value of said beer to the brewer is five dollars per barrel.

"5.   The entire product of twelve of said breweries is sold in the State of Missouri, the larger portion of the product of ten of said breweries is sold in this State and of the remaining three breweries two-thirds of the product of one, four-fifths of

State v. Broeder.

the product of another, and one-half of the product of the third, is sold outside of the State.

"6.    There are annually imported into the State of Missouri for sale therein, from adjoining States, and particularly from the States of Illinois and Wisconsin, 165,000 barrels of beer of 31 gallons each, of the value of five dollars per barrel. In addition, beer and ale are imported from foreign countries, and a malted liquor brewed from wheat and called "weissbeer" is manufactured and sold in Missouri.

"7.    Beer must, for purposes of sale, be inclosed in tight packages of glass or wood.    It is put up in bottles, barrels, half-barrels, kegs and eighths.

"8.    The defendants reserve the right to offer further evidence in the cause, and the State reserves all objections as to the relevancy of any fact above admitted."

The defendant offered testimony showing that the brewers' association of this State, under what is commonly known as the Brewer's Compromise Act, passed by the General Assembly and approved April 15, 1901, did on April 16, 1901, pay to the State treasurer one hundred and ninety-one thousand two hundred and fifty dollars to the credit of the revenue fund in settlement of the tax on all beer brewed in the State by members of the Brewers' Association, from September 20, 1899, to March 8, 1901, on the basis provided for in the compromise act and that the Anheuser-Busch Brewing Company and the W. J. Lemp Brewing Company were members of the Brewers' Association.    The court found the defendant guilty and assessed his punishment at a fine of ten dollars.    After unsuccessful motions for new trial and in arrest of judgment, defendant appealed.

*Boyle, Priest & Lehmann, Edw. C. Kehr* and *G. Pitman Smith* for appellant.

The information is defective for the following reasons: (1) The act applies only to brewers or manufacturers and importers of beer. (a) This is evident from the fact that no one but brewers and importers are named in the act. (b) Its provisions with regard to inspection of beer by the mode pointed out by the act, and the decision of the Supreme Court in State ex rel. v. Wood, 155 Mo. 451, can alone be accomplished with respect to them without destroying the article inspected. (c) The law does not contemplate that the beer shall be contraband if it should escape the hands of the brewer and inspector, but provides no mode by which a dealer with domestic brewers could have the beer inspected. (d) Construction of the act by the Supreme Court necessarily confines the inspection to the manufacturer and importer; and this is the interpretation made by the compromise act of 1901, whose terms the brewers and importers could alone fulfill and comply with, and is the interpretation made by the Governor and State Treasurer in effecting a compromise. (2) Only beer manufactured in this State and sold for consumption in this State is subject to inspection and labeling. The information does not show that the defendant sold the keg of beer for consumption in this State. For aught that appears by the information, it may have been sold by the defendant for export, and, if so, no label was required by express provision of section 13 of the law. Comm. v. Stack, 19 Pick. 306. (3) The information does not charge that the beer had not been inspected and had not been labeled. (4) The law does not require the certificate or label which the information describes. (a) Descriptive matter must be proved as laid, unless the whole of the larger allegation wherein the surplusage occurs may be rejected. Bishop's Crim. Prac., sec. 485, 486. (b) Where time is alleged in a form descriptive, it must be proved as laid. Ibid, sec. 488a. (c) Where every

Vol 90 app—11

averment of the indictment may be admitted as true and no offense appears, the indictment is bad.   State v. Mahan, 2 Ala. 340.   (d) A written instrument must be proved as described. State v. Fay, 65 Mo. 493; State v. Smith, 31 Mo. 120.

*W. B. M. Cook, Claude R. Ball* and *J. D. Barnett* for respondent.

(1)   Where the statute creates a number of distinct offenses of which the offense charged is one, the information is good.   State v. Smith, 24 Mo. App. 413; State v. Fare, 39 Mo. App. 110; State v. Murphy, 49 Mo. App. 270.   (2)   The information in this case follows the language of the statute, or uses language or words equivalent to those used in the statute. In this case, the information following the language of the statute as it does, is beyond question sufficient.   See volume 2, page 1662, section 245, Pattison's Latest Digest, and authorities there cited.   See also State v. Van Wye, 136 Mo. 227-241; State v. Davis, 70 Mo. 467; State v. Stevens, 62 Mo. App. 232; State v. Brinkman, 40 Mo. App. 284; State v. Fare, 39 Mo. App. 110.   (3)   The information apprising the defendant of the charge against him is sufficient.   State v. Haley, 52 Mo. App. 520.   (4)   The appellant claims that the act under which this prosecution was commenced is not a criminal statute.   This contention is without merit.   The statute has been construed.   State ex rel. v. Wood, 155 Mo. 451; State v. Bixman, 162 Mo. 1.   In the Wood case Judge GANTT, delivering the opinion of the court, says (page 451): "If these words do not define a criminal offense, then it will be difficult to find appropriate language for that purpose."

BLAND, P. J.—The information is bottomed on section 10 of the Beer Inspection Act, approved May 4, 1899 (Session

Acts 1899, p. 230), which is as follows:

"Sec. 10. Any person who shall sell any beer or malt liquor within this State which has not been inspected according to the provisions of this act, or contained in packages which shall not have upon them the certificate of the State inspector, or any person shall fail to destroy said certificate or label after the contents of said package are disposed of, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine not exceeding five hundred dollars or by imprisonment in the county jail for a period of not less than six months, and in addition thereto shall have his license or other authority, giving him the right to manufacture or sell said liquors in this State revoked, and shall not again receive any such license or other authority for a period of two years thereafter."

This section creates three distinct and separate offenses. The first may be committed by a brewer or producer of malt liquors who sells the same within this State without causing it to be first inspected by the State inspector. Second, by a person selling any beer in this State contained in packages which do not have upon them the certificate of the State inspector certifying that the beer contained in the packages has been inspected. Third, by any person who, after having disposed of the contents of a package upon which a State inspector's certificate had been placed, shall fail to destroy such certificate. By section three of the act it is made the duty of a manufacturer or brewer of beer to cause the same to be inspected by the State inspector before selling it in this State. Section seven of the act imposes upon the State inspector the duty of inspecting beer manufactured in this State and, when by his analysis the beer is of the required purity, to place his label or certificate on the package containing such beer. The certificate or label provided for by the act is an official docu-

ment and when placed on a package containing beer is the official evidence, provided by the act, of the fact that the beer contained in the package has been duly inspected and may be lawfully sold within this State; without this certificate on the package the converse is true that the beer may not be lawfully sold in this State. In State ex rel. v. Wood, 155 Mo. 425, it was held that a reasonable construction of section seven of the act did not require the State inspector to open and inspect each package of beer, but provided a practical method of inspecting the beer and mash at the brewery, and, in State v. Bixman, 162 Mo. 1, it was held by our Supreme Court that the inspector was authorized to go to the brewery and to take samples of malt and beer in the vats in the process of fermentation and from these make his analysis and that he was not restricted to analysis or inspection of the finished product. By the terms of sections three and seven of the act the burden and duty of inspection are cast on the producer of the beer and the State inspector—the obligation is on the brewer to cause his products to be inspected before he can lawfully sell them in this State and the duty of the inspector is to inspect the product and if he finds it up to the required standard of purity then when the product is run off into packages to put his official certificate upon each of them.

The information does not allege that Broeder was a brewer or that he produced the beer contained in the package which he is alleged to have sold. It alleges that the package did not then and there "at the time and place of sale" have upon it "the label and certificate of the State inspector of beer certifying that said beer had *then* and *there* been inspected." This language imports that the beer had not been inspected at the time and place of sale and did not have upon it the State inspector's certificate of the fact that it had been then and there inspected and stamped with the official certificate. All of this

might be true and it might also be true that the package did have the inspector's certificate on it certifying that it had theretofore been inspected at some other time and place; in other words, the information does not negative, in direct terms, the fact that the package did not have upon it the official certificate of the State inspector. An indictment or information must bring the accused strictly and certainly within the terms of the offense as described in the statute and should leave nothing to conjecture or inference (State v. Latshaw, 63 Mo. App. 496)—it should state the exact offense with which the defendant is charged. State v. Clevenger, 20 Mo. App. 626.

II. The words "then and there," at the conclusion of the charging clause in the information, can not be rejected as surplusage for the reason that they are descriptive of both time and place when and where it is alleged the beer should have been inspected and labeled, and go to the substance of the offense. State v. Gibson, 111 Mo. 92.

III. The contention that the information should negative the fact that the beer was sold for exportation, is without merit. The exception in the act in respect to beer for exportation is not contained in the section creating the offense, and is not descriptive of the offense, and is, therefore, a matter of defense. State v. Bockstruck, 136 Mo. 335; State v. Smith, 60 Mo. App. 283.

IV. We are not impressed with the argument of appellant's counsel that "label" and "certificate" as named in the act have a different signification and that it is a label and not a certificate mentioned in the act that the inspector is required to place on the packages of beer. Section seven requires the inspector, after he has made the inspection if he finds the product of standard purity, to "place upon the packages containing such beer or malt liquor his label, certifying that the same has been inspected and made from wholesome ingredients;"

the label here spoken of is a certificate, and nothing more, certifying that an inspection has been made and to the quality of the contents of the package. Section 7a directs the State Treasurer to provide these labels and certificates and to countersign them and to deliver them to the inspector and to charge them to him as delivered and to credit his account with money paid in as collected by him from the brewers. But one certificate or label is provided for by the act. This certificate must, to conform to the requirements of the act, be countersigned by the State Treasurer and signed by the inspector when he places it on a package. The obvious intention of the Legislature in requiring this certificate to be placed on all packages of beer sold within this State is to prevent an evasion of the revenue features of the act. This certificate, in order to be evidence of the fact that the act has been complied with, must contain all the requirements of section 7a, that is, it must be countersigned by the State Treasurer and be signed by the State inspector.

For the error of the trial court in overruling defendant's motion to quash the information, the judgment is reversed and the cause remanded with leave to the prosecuting attorney of Montgomery county to amend the information if he is so advised.

## ON MOTION FOR REHEARING.

BLAND, P. J.—It is contended by appellant that the cause should not be remanded with leave to the prosecuting attorney to amend the information:

First, for the reason (as alleged in the motion) that the information failed to charge any offense and for that reason is not amendable, and

Second, that section 2481, Revised Statutes 1899, that authorizes the amendment of an information, is opposed to

section 11 of the Missouri Bill of Rights. Admitting, for the sake of argument, that the information wholly fails to state any offense, we do not think it follows that it may not be amended. Section 2481, supra, provides that, "Any affidavit or information may be amended in the matter of form or substance at any time by leave of the court, before the trial." Section 2372, Revised Statutes 1899, provides that, "When a defendant shall have been acquitted of a criminal charge upon trial on the ground of variance between the indictment and the proof, or upon any exceptions to the form or substance of the indictment, or where he shall be convicted but the judgment shall for any cause be arrested, he may be tried and convicted on a subsequent indictment for the same offense or any degree thereof for any attempt to commit such offense." Under the provisions of this section the practice has been universal, so far as we are informed, that when a defendant has been convicted on an indictment and the judgment has been arrested for any of the reasons contained in this section, and where the evidence shows there is reasonable cause to believe him guilty of the offense attempted to be charged, or any degree of that offense, for the court, where the indictment was found, to hold him on his recognizance, or require him to give a new one, or to commit him to answer a new indictment, and in such circumstances it has been repeatedly held that the filing of a new indictment or information is a continuance of the first. State v. Daugherty, 106 Mo.. l. c. 186-187, and cases cited.

The obvious purpose of the above statutes and others of a like character, to be found in the code of criminal practice, is to prevent the release of one accused of a crime and let him go free and thus give him an opportunity to escape without a legal trial, after he has once been brought into court to answer an indictment or information and there is probable cause to believe him guilty. And it seems to us that where the right is

given to amend, as to both form and substance, as it is in section 2481, supra, the right can not be restricted to such defects as would be cured by the statute of jeofails, after verdict, but exists even if the information failed to state any offense, if it can be clearly gathered from what is stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute.   Especially should an amendment be allowed in a case like the one at bar where there is no shadow of doubt as to the offense intended to be charged and where, from the agreed statement of facts, it is equally clear that the prosecution is well founded.   Bishop on Criminal Procedure (3 Ed.), sec. 714, speaking in reference to amending informations, says: "The officer prosecuting it being always in court, it may, on his application, be amended. to any extent consistent with the orderly conduct of judicial business, the public interest, and with private right."   Amendments to cure omissions in the information or affidavit,   or matters of form, may be made on the trial.   The State v. Mc-Cray, 74 Mo. 303.

When an attempt by information has been made to charge the defendant of a crime, and he is before the court to answer the charge intended to be made against him, it would be a perversion of both the spirit and intent of the code of criminal procedure to discharge him before a valid information could be filed against him by the prosecuting officer for the reason the first information was insufficient to charge the offense intended to be charged.

The constitutional question raised by the motion is beyond our jurisdiction, as it was not raised in the trial court in a manner that will authorize us to certify the case to the Supreme Court.

The motion for a rehearing is overruled.   All concur.