**STATE of Missouri, Respondent,**

v.

**Robert Joseph LANE, Appellant.**

No. 49969.

Supreme Court of Missouri,

Division No. 1.

Oct. 14, 1963.

William B. Spaun, Hannibal, for appellant.

Thomas F. Eagleton, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

Geraldine and Vincel Avery, husband and wife, resided at 1714 Vermont Street in Hannibal, Missouri. Robert Joseph Lane, the appellant, married the Avery's daughter. Lane, who was known as Bobby Joe, and the Averys had been on friendly terms until some difficulty arose between Lane and Vincel, apparently about a boat in which each had an interest. (According to Lane's wife, the difficulties with the boat had caused her parents to stop speaking to

her and her husband shortly after the Christmas preceding the assault in question.)

On February 9, 1962, the Averys stopped at Bud Head's bar in Hannibal to cash Vincel's paycheck. Geraldine drank a soda and Vincel a beer. Bobby Joe was in Head's, playing shuffleboard, when the Averys left at about 4:45 P.M. No conversation passed between the Averys and Lane in the bar, although Lane said that he spoke to the Averys and they refused to speak to him.

The Averys went to their home and, after they had supper, Vincel went to bed at about 5:45 P.M. Around 6:15, Geraldine, who was in the living room watching television, heard a knock on the back door. She went to the door and turned on the light and saw Bobby Joe standing at the back door, holding what she described as "a little short 32" revolver. Geraldine said that she "kind of froze" when she saw the gun and Bobby Joe opened the door and walked in. She stepped back into the hall and Bobby Joe put the gun into her chest. Geraldine asked what he was doing and Lane replied, according to her, "I am going to shoot you and I am going to kill you. Is Vincel home?" Geraldine said he was not and asked Bobby Joe to put the gun down. He said: "I am going to shoot him and going to kill you. Is Vincel home?" Geraldine again replied: "No." The gun was being pressed into her chest so hard it was hurting her and she said, "Bob, if you have got to shoot, shoot me, but leave him alone." Lane then pulled the trigger and shot Geraldine through the chest. Geraldine called to Vincel to "Get out!" and ran through the kitchen, meeting her husband just as he came from the living room into the kitchen. She told him, "Bob shot me." She then ran through the front door to a neighbor's house.

Vincel had jumped out of bed when he heard the shot which wounded his wife. He met her near the kitchen as she was going through the front door. As she left,

Bobby Joe fired one shot at Vincel from about seven feet, the bullet striking Vincel in the abdomen. Vincel ran into the bedroom and tried to hide under the bed. Bobby Joe followed and found him. Vincel, according to his testimony, said: "Bobby, don't shoot me because you have caused enough trouble. Don't shoot no more because you have caused enough trouble." Bobby Joe, according to Vincel, said: "Don't touch me, Vince, I'll kill you!" Vincel got up and walked toward Bobby Joe and tried to run past him. Just as he reached the door of the bedroom, Bobby Joe fired again, the bullet striking Vincel in the shoulder. Vincel then ran out the front door to the neighbor's house to which his wife had gone.

Vincel and Geraldine were taken to a hospital for treatment of the wounds, from which they recovered. An operation was performed upon Vincel and one bullet removed and eight perforations of the intestines repaired. The doctor who performed the operation stated that, had not attention been given promptly, death would likely have resulted from the wounds.

The police were called to the Avery residence and the appellant was apprehended in an automobile some distance away a short time after the shooting. The officer who arrested him took a thirty-two caliber pistol and twenty rounds of ammunition from him. The pistol was identified as the weapon used in the assault and was introduced in evidence. Lane was taken to the police station where he told the officer that he and his father-in-law and mother-in-law had gotten into an argument the day before and again that day over a boat and motor and "he was going to kill the son-of-a-bitch." He later signed a statement which was introduced into evidence at the trial in which he admitted going to Avery's house, taking the gun. He said: "I had the intention when I went up there if he got smart with me I would kill him and I didn't intend to hurt her." He stated that they had had several arguments over the boat and motor.

By an information filed in the Hannibal Court of Common Pleas, Lane was charged with assault with intent to kill with malice aforethought for the assault upon Vincel. A change of venue was taken to Pike County. Upon trial there, evidence establishing the foregoing facts was introduced.

The defense offered evidence designed to show that Lane was insane at the time of the shooting. No medical testimony was offered. However, several members of his family testified that they saw him in the county jail shortly after his arrest, that his pupils were dilated and that he appeared to be in a daze or stupor. The court instructed on the defense of insanity.

The jury found Lane guilty and fixed his punishment at ten years imprisonment in the State Penitentiary. This appeal is from the judgment and sentence imposed upon such verdict.

■ On the appeal here, appellant contends that his motion for a directed verdict of acquittal at the close of the evidence should have been sustained. He also contends that, if the evidence shows him to be guilty, it is of a lesser offense than that for which he was convicted. However, the foregoing recital of the facts can leave no doubt that the evidence did show an assault with malice aforethought.

■ Malice aforethought is the element which distinguishes the degrees of assault with intent to kill or do great bodily harm. Sections 559.180 and 559.190, RSMo 1959, V.A.M.S. "Malice aforethought" means the intentional doing of an unlawful act which was determined upon before it was executed. State v. Hagerman, Mo.Sup., 244 S.W.2d 49, 52; State v. Ayers, Mo.Sup., 305 S.W.2d 484, 486. The evidence was certainly sufficient in this case to justify the jury's finding of malice aforethought. Premeditation was evident from the testimony of the victim of the assault as well as from the statement of the appellant. Some effort was made by the defense to explain the appellant's action by

intoxication, inasmuch as he had spent a considerable portion of the afternoon at Head's bar. However, no witness testified that Lane was intoxicated and, in his statement, he denied that he was. Furthermore, voluntary intoxication would not have negatived malice aforethought in any event. State v. Lloyd, Mo.Sup., 217 S.W. 26. We are of the opinion that the evidence amply supports the verdict of the jury, finding appellant guilty of an assault with intent to kill with malice aforethought.

The appellant's motion for new trial complains that, on the day of trial, the court permitted the prosecuting attorney to file an amended information in the case. In his brief, he contends that the original information wholly failed to charge an offense and that it could not be amended. The amended information, omitting formal portions, read as follows:

"* * * said Defendant, Robert Joseph Lane, * * * did then and there wilfully, unlawfully, feloniously, on purpose, and with malice aforethought, make an assault upon the body of one Vincel Avery, then and there being, with a deadly weapon, to-wit, a thirty-two caliber pistol, loaded with gun powder and leaden balls, which he, the said Robert Joseph Lane, then and there had and held, with the *felonious* intent him, the said Vincel Avery, then and there, *on purpose, and of his malice aforethought, feloniously* to kill, * * *."

The original information differed from the amended information in that the italicized words were not in the original information. In addition, the words, "and murder," appeared following the word, "kill," in the original information.

The appellant cites no authority in support of his contention that the original information was fatally defective nor does he cite any authority for the application of the rule for which he contends, i. e., that a fatally defective information may not be amended. On the other hand, Supreme

Court Rule 24.02, V.A.M.R., recognizes the right to amend an information at any time before verdict if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. Compare this provision with that found in Section 545.290, RSMo 1959, V.A.M.S., which permitted amendments as to form or substance prior to trial and as to matters of form and variance at trial. In a recent case, the St. Louis Court of Appeals did state that a complaint charging violation of a city ordinance, which specified a repealed ordinance and thereby failed to charge an offense, could not, under Rule 24.02, be amended in the St. Louis Court of Criminal Corrections. City of St. Louis v. Vetter, Mo.App., 293 S.W.2d 140. However, that court, in the case of State v. Broeder, 90 Mo.App. 156, 1. c. 167 (not cited in the Vetter case), stated:

> "And it seems to us that when the right is given to amend, as to both form and substance, as it is in section 2481 [RSMo 1899], supra, the right can not be restricted to such defects as would be cured by the statute of jeofails, after verdict, but exists even if the information failed to state any offense, if it can be clearly gathered from what is stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute."

In the case of State v. Kusel, 29 Wyo. 287, 213 P. 367, the Supreme Court of Wyoming made an exhaustive study of the question of the right, under a statute similar to our Section 545.290 and Rule 24.02, to amend a defective information. The Wyoming court cited State v. Broeder, supra, and concluded that it correctly stated the rule which should govern such cases. Although this court may have never expressly stated such rule, it has certainly applied it. Thus, in State v. Murphy, Mo. Sup., 347 S.W.2d 230, we approved an amendment, under Rule 24.02, of an information charging stealing by means of deceit by which there was inserted a pro-

vision that the defendant acted feloniously, intentionally and unlawfully to appropriate the property of another to his own use and thereby deprive the owner of the use thereof. This amendment added elements of the offense necessary for a valid information and this court held the amendment to be within the purview of Rule 24.02.

■ In this case, the original information charged a felonious assault, with malice aforethought, upon Avery with a deadly weapon with intent to kill. The charge sets out the basic elements of the offense proscribed by Section 559.180. The distinguishing element of the offense under that section, malice aforethought, was specified. Whether or not the original information was in all respects sufficient, there can be no doubt that the prosecutor intended to charge the offense under Section 559.-180. The amended information, likewise, charges the offense under that section. Thus there was no change in the offense charged in the original and amended information. The appellant in nowise shows that he was prejudiced by the filing of the amended information. Therefore, the court properly permitted its filing. There being no change in the offense charged, appellant's objection that he was entitled to another preliminary hearing before the filing of the amended information is without merit. State v. Tunnell, Mo.Sup., 296 S.W. 423. He was actually arraigned on the amended information so his objection in that regard is unfounded.

■ In his motion for new trial and brief, appellant objects to the court's refusal to permit the introduction of testimony designed to show that, during the trial, Vincel Avery had been intoxicated and had been excluded from the courtroom because of drunken and disorderly conduct. Upon cross-examination of Vincel, appellant's counsel had asked him whether or not he had been drinking on the day of the trial and he answered, "No." In appellant's case, a deputy sheriff, who was acting as bailiff in the courtroom, was

called as a witness and asked whether or not the court had ordered him to remove Vincel from the courtroom. An objection to this question was sustained. Counsel for appellant then made an offer of proof to show that Avery was intoxicated when first called as a witness for the State and that a recess was called for that reason. Counsel stated: "We feel that it is very important at this time to be able to show the true nature and type of person that the complaining witness is and his regard for the jury and this court." The offer was rejected and in his motion for new trial appellant assigns this ruling of the court as error. In support of this assignment, the appellant cites State ex rel. State Highway Commission v. Fenix, Mo.App., 311 S.W.2d 61, and State v. Davis, Mo.Sup., 190 S.W. 297. Neither of these cases bears in any respect on the objection presented. Actually, the "true nature and type of person" that Avery was was not an issue in the case. His credibility as a witness could have been impeached by showing that his general reputation for truth and veracity was bad. However, such impeachment could not be made by a showing of a poor general reputation for morality, which apparently was the purpose for which the testimony was offered. State v. Williams, 337 Mo. 884, 87 S.W.2d 175, 180, 100 A.L.R. 1503; State v. Kain, Mo.Sup., 330 S.W.2d 842, 845.

The appellant did not contend that his testimony would have shown that Avery was drunk at the time that he actually testified, a matter which might have had some bearing upon his credibility. 3 Wigmore on Evidence, (3rd ed.), § 1005, p. 665. Nor was the evidence admissible to contradict Avery's denial on cross-examination that he had been drinking. The inquiry related to a collateral matter and extrinsic testimony to establish such matter was properly excluded. State v. Messley, Mo.Sup., 366 S.W.2d 390, 393.

The appellant's motion for new trial contains several other specifications of error which have not been presented in his brief in this court. They are, therefore, deemed to have been abandoned. Supreme Court Rule 28.02.

We have examined the matters of record and find no error in them.

The judgment of the trial court is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.