**STATE of Missouri, Respondent,**

v.

**Robert Joseph LANE, Appellant.**

**No. 50064.**

Supreme Court of Missouri,

Division No. 1.

March 9, 1964.

See, also, 371 S.W.2d 261.

William B. Spaun, Hannibal, for appellant.

Thomas F. Eagleton, Atty. Gen., John H. Denman, Asst. Atty. Gen., Jefferson City, for respondent.

HOLLINGSWORTH, Presiding Judge.

By an information filed in the Hannibal Court of Common Pleas, defendant was charged with feloniously assaulting one Geraldine Avery with a deadly weapon, to wit: a loaded pistol, with intent to kill. Thereafter, on application of defendant, the case went on change of venue to the Circuit Court of Shelby County, where an amended information was filed charging defendant under § 559.180 RSMo 1959, V.A.M.S.,[1] with feloniously, on purpose, and of malice aforethought making an assault upon Mrs. Avery with a deadly weapon, to wit: a loaded pistol, with intent to kill.

Tried to a jury, defendant was found guilty of felonious assault with intent to kill Mrs. Avery, with malice aforethought, and his punishment was assessed at imprisonment in the State Penitentiary for a term of five years. His motion for new trial was overruled and he has appealed from the judgment rendered and the sentence imposed in accordance with the verdict. Jurisdiction is here vested under Article V, § 3, of the Constitution of Missouri, V.A.M.S.

The sole error assigned on appeal is that the trial court erred in submitting the issue of defendant's guilt of assault with intent to kill *without malice aforethought*.

The evidence in behalf of the State was, in substance, as follows:

At the time of the shooting, Mrs. Avery and her husband, Vincel, resided at 1714 Vermont Street in the City of Hannibal. Defendant, Robert Joseph Lane, frequently referred to in the evidence as "Bobby Joe" Lane, was married to the Averys' daughter, Donna. The two families had been on friendly terms until a disagreement arose between them some year or more prior to the shooting concerning a joint venture by them undertaken in the acquisition and operation of a boat.

On February 9, 1962, Mr. and Mrs. Avery stopped at Bud Head's tavern to cash a check. They there saw Bobby Joe playing shuffle board, stayed in the tavern only a few minutes, and then went to their home. About 6:15 p. m., at which time Mr. Avery was asleep in the bedroom and Mrs. Avery was watching television in the living room, Mrs.

1. To which revision all statutory references herein are made.

Avery heard a knock at the back door. She went into the back hall, turned on a light and, looking through a glass in the back door, saw Bobby Joe standing at the door, with a .32 caliber revolver in his hand. He opened the door and stepped inside the hall; Mrs. Avery stepped back and dropped her hands to her sides. Bobby Joe walked in and, with his finger on the trigger of the pistol, "stuck the gun in [her] chest." She said, "Bob, what are you going to do?" He said, "I'm going to shoot you and I'm going to kill you. Is Vince home?" She said, "No", and said, "Bob, put that darned gun down." Bobby Joe, then standing a foot or more in front of her, and very angry, was pressing the revolver hard into her chest and it was hurting her so bad that she said, "If you've got to shoot somebody, shoot me and leave [Vince] alone." Bobby Joe then shot her in the chest. She raised her hand to her chest and ran through the kitchen into the living room, where she encountered her husband and told him, "Bob shot me." She then ran out the front door to the home of Mr. and Mrs. Don Pickett across the street. She was taken from the Pickett home to Levering Hospital, where Dr. Robert Joseph Lanning, M. D., treated the shot wound inflicted upon her by the bullet fired into her chest by Bobby Joe. The bullet had entered the central portion of Mrs. Avery's chest and pierced her right lung, causing it to collapse and blood to flow into the pleural cavity. The immediate treatment given her consisted of placing a tube into the lung to suck out the air and blood. If the condition found had not been promptly treated, death could have ensued within hours. The bullet was removed from her lung on February 19.

Vincel Avery testified that he, awakened by the shot fired by Bobby Joe into Mrs. Avery's chest, jumped from his bed, came out of the bedroom, met his wife, saw blood coming from her chest, and his wife said, "Bobby Joe shot me." He then saw Bobby Joe, who followed him back into the bedroom. Vincel got behind the bed. Bobby Joe came around to Vincel, who said, "Bob-

by, don't shoot no more, you've done enough damage." Bobby Joe said, "Don't touch me, Vince, I'll kill you." Vincel then ran past Bobby Joe and began to back out the door. Bobby Joe shot Vincel, first in the stomach and then in the back. Vincel also went across the street to the Pickett home and was taken from there by ambulance to Levering Hospital.

Bobby Joe was arrested about 8 p. m. and taken to the police station, where he made a statement which was transcribed and thereafter read and signed by him. That statement was admitted into evidence and read by the jury after defendant's counsel announced that he neither challenged nor desired "a separate hearing on its voluntariness or anything of that sort", his only objection, he said, being "that it might have been effected by his [Bobby's] mental condition." Counsel for defendant also suggested, "I think the jury could read it themselves," which the court then permitted the jurors to do. That statement, to the extent material, reads:

"Some time after 4 o'clock I called a cab at Head's Bar and rode around between 30 and 45 minutes then I went to 2010 Hope Street and got my car. Then I went back down to Head's Bar; and later left there, I don't know what time, and went to my father-in-law's on Vermont Street I unlocked the glove compartment of my car and took out a .32 revolver which I bought at Harve's Hunting Hut on Thursday for $15.00. I had the gun in my hand when I knocked on the door. My mother-in-law opened the door and grabbed my hand and we went to scuffling and she called me some names. I don't remember exactly what she said. I had the gun cocked in my hand and when she grabbed my arm I pulled the trigger. She screamed and I don't know if the bullet hit her or not and I don't know where she went. I don't see how I could have missed her. This happened just inside the door.

"I went on into the house and Vincel jumped up off of the bed and said, 'My God,

what happened?' He came running into the kitchen where I was and told me I could have the god-dammed boat and a bunch of stuff but I was so god-dammed mad I don't know if I shot him while in the house or not, and he went running back into the bedroom and down under the bed and out the other side. Then he ran out the front door which faces Vermont Street. I ran out the front door after him and shot at him while he was running toward Donny Pickett's house. I don't know if I shot at him once or twice and I don't know if I hit him. I don't know who opened the door over there so I did not shoot him in the doorway.

"I got in my car and drove around the block and came in the back driveway and went back in the house looking for my mother-in-law and could not find her. Then I left again and I saw the ambulance and right after that the Police Car put a light on me and I drove down a dead-end street and stopped. I got out of the car and I don't know if the Police took gun out of my hand or if it was in the front seat of the car or in my pocket or what. Then they brought me to the police station."

Mrs. Gertrude Lane, Bobby Joe's mother, testified in his behalf, saying that she saw Bobby Joe at the Hannibal Police Station shortly after the shooting and that he did not look normal to her. Mrs. Howard Kiser, the wife of Geraldine Avery's brother and a sister of defendant, testified to the same effect and that Bobby Joe seemed hypnotized, like he was in another world. Police Officer Radford testified that while enroute to the police station, Bobby Joe said he did not "aim" to shoot his mother-in-law.

Defendant testified: Mrs. Avery unlocked the back door and admitted him into the hall. He then had a pair of gloves, a revolver and a belt in his hand and was engaged in lighting a cigarette. He did not tell her he was going to kill her husband; it was not his purpose to harm anyone. He did not push the revolver against Mrs. Avery, she grabbed it. He pushed her away, she came back, and he again tried to push her away and "purtnear fell through the door and the gun went off." He did not tell the officers at the police station, as recited in the written statement signed by him, that "I had the gun cocked in my hand and when she grabbed my arm I pulled the trigger."

The record shows that defendant was represented by his own counsel throughout the trial and by the same counsel on this appeal; that the trial court comprehensively instructed the jury on the issue of defendant's (1) guilt of feloniously assaulting Mrs. Avery *with malice aforethought* in the manner described in the information and in the evidence under § 559.180; (2) the issue of his guilt of so assaulting her *without malice aforethought* under § 559.190; (3) the issue of defendant's innocence by reason of an insane condition of mind such as rendered him unable to distinguish between right and wrong with reference to such an assault; (4) the issue of his innocence on grounds that the shooting of Mrs. Avery was the result of accident or misadventure; and (5) the general issue of innocence based upon the presumption of his innocence and the necessity of the State proving his guilt beyond a reasonable doubt before he could be convicted of either of the two degrees of felonious assault submitted under the instructions.

As stated, defendant's sole complaint is that there was no evidence upon which he could be found guilty of assault with intent to kill *without malice aforethought*. In support of that assertion, defendant cites State v. Lane, Mo., 371 S.W.2d 261 [2] and State v. Hagerman, Mo., 244 S.W.2d 49. He also says: "The only defense that defendant maintained was accident and/or insanity and the instructions to find the defendant guilty on lesser offense of assault with intent to kill without malice was not justified and placed an undue burden on defendant, where instruction was given over objections of

2. Which affirmed a sentence of imprisonment of ten years imposed upon defendant for the shooting of Vincel Avery.

defendant." And, further, he says: "The law presumes malice as a concomitant of an assault with a deadly weapon where there is absence of countervailing circumstances or testimony", citing § 559.180 and State v. Ayers, Mo., 305 S.W.2d 484.

The argument in support of the foregoing contentions is thus stated in defendant's brief:

"As related in the Statement of Facts, defendant stood on the defenses accident and insanity. He elected to be tried on the offense as charged, and objected to the Jury being instructed on a lesser offense. Certainly under the evidence there could be no other conclusion than that the offense was committed with malice. Had it been an accident, he should have been acquitted, and had the Jury found him insane at that time he should have been so found by the Jury. The Jury by their verdict found him not guilty of an assault with Malice aforethought, and ruled out the defenses of accident and insanity. The Instruction given by the Court, No. 4, was clearly in error under the evidence, and the defendant respectfully urges the court to reverse the conviction of the defendant."

Said Instruction, in material part, reads:

"If you find the Defendant not guilty of an assault with intent to kill with malice aforethought, you should then determine whether or not, under the evidence and these instructions, the Defendant is guilty of an assault with intent to kill without malice aforethought.

"Bearing in mind the definitions of the terms 'wilfully,' 'on purpose,' 'malice aforethought,' and 'feloniously,' heretofore given you, you are instructed that if you believe and find from the evidence, to a moral certainty and beyond a reasonable doubt, that an assault was made by the Defendant upon Geraldine Avery with a pistol loaded with gun powder and leaden balls, and if you find that the Defendant made such assault with the felonious intent, then and there, to kill Geraldine Avery, if you so find, but that the assault was made without malice aforethought, as that term has been defined, and if you further find and believe that said pistol was a deadly weapon, that is a weapon, likely, as used, to produce death, then you will find the Defendant guilty of assault with intent to kill without malice aforethought, and unless you so find all the facts to be, or unless you find that the Defendant is not guilty by reason of insanity in accordance with Instruction Number 5, or unless you find that the Defendant is not guilty by reason of accident in accordance with Instruction Number 6, you will acquit the Defendant of assault to kill without malice aforethought.

"If you find the Defendant guilty of assault with intent to kill, without malice aforethought, then you will assess his punishment at imprisonment", etc.

As we understand the effect of defendant's contention, it is that, under the evidence, the jury could have arrived at no conclusion other than that the shooting of Mrs. Avery by him was done by him either (a) on purpose, "with malice aforethought", or (b) by reason of his insanity or (c) accidentally; that had the jury found either that the shooting was accidental or an insane act on his part, then its verdict, under the instructions of the court, necessarily would have been "not guilty"; consequently, defendant contends, the only *lawful verdict* of guilt that the jury could have returned was assault with intent to kill *with* malice aforethought; and that, therefore, the verdict finding defendant guilty of assault with intent to kill *without* malice aforethought was unlawful and void.

 It is the sole province of the jury to believe or disbelieve the whole or any portion of the testimony of any witness with reference to any fact in dispute in the case and then to arrive at its verdict upon the basis of the facts as it finds them to be. There was ample evidence in the case, as hereinabove shown, to support either a finding that defendant feloniously assaulted

Mrs. Avery in the manner alleged in the information with malice aforethought or that when he entered the Avery home Mrs. Avery began to scuffle with him and to call him "names", whereupon he, with the cocked pistol which he then held in his hand pointed directly at her chest, in angry retaliation, intentionally "pulled the trigger". If the jury so found the latter to be the fact, its verdict finding defendant guilty of assault with intent to kill without malice aforethought is supported by substantial evidence.

The statute, § 559.180, under which defendant was charged, definitely includes the lesser offense of assault with intent to kill without malice aforethought, as defined in § 559.190. Therefore, under the provisions of § 556.230 the court correctly submitted the issue of defendant's guilt of the lesser offense (as defined in Instruction 4, supra) and the jury was authorized to find him not guilty of the offense charged in the information under § 559.180 and to find him guilty of the lesser offense, as defined and included in § 559.190 and as submitted under Instruction 4. State v. Parrish, Mo., 214 S.W.2d 558, 560–561; State v. Ayers, Mo., 305 S.W. 2d 484, 486 [1–3]; State v. Swiney, Mo., 296 S.W.2d 112, 114 [2] [3]. Defendant's contention that the trial court erred in submitting the issue of his guilt of assault with intent to kill without malice aforethought, as hypothesized in Instruction No. 4, must be denied.

Examination of the record, as required by S.Ct. Rule 28.02, V.A.M.R., shows that defendant and his counsel were present at all pretrial, trial and after-trial proceedings; that the information is in approved form; that defendant was arraigned and entered a plea of not guilty; that all trial proceedings were in due form; that the verdict is sufficient in form and the punishment assessed is within the limits provided by the statute, § 559.190; that defendant was granted due allocution; and that the judgment and sentence are valid.

The judgment is affirmed.

All concur.