STATE of Missouri, Respondent,

v.

Jack MORRIS, Appellant.

No. 54321.

Supreme Court of Missouri,
Division No. 2.

June 14, 1971.

Motion for Rehearing or for Transfer to Court
En Banc Denied Sept. 13, 1971.

———◆———

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

John E. Hosmer, Springfield, for appellant.

FINCH, Judge.

Defendant was charged with uttering, with intent to defraud, a check for $1,646.-37 at a time when he did not have sufficient funds in or credit with drawee bank for payment in full on presentation (a felony under § 561.460, V.A.M.S.). The jury found defendant guilty but could not agree on punishment. The court then assessed a sentence of one year in the county jail. Defendant appeals, raising questions as to (1) the right of the state to file the amended information on which defendant was tried, (2) the alleged disqualification for prejudice of one of the jurors, (3) alleged trial errors consisting of failure to instruct and allegedly prejudicial argument to the jury, and (4) the propriety of having the prosecution's case presented to the jury largely by attorneys other than the regular prosecuting attorney. We affirm.

The original information filed by the state alleged that, with intent to cheat and defraud, defendant uttered and delivered to Ava Sales Company his check dated January 11, 1966, on the Citizens Bank of Rogersville, Rogersville, Missouri, for $1,646.-37, he being aware that there were insufficient funds in said bank to meet the check when presented for payment. On Wednesday of the week preceding trial date, the state mailed to counsel for defendant a proposed amended information. The principal change from the original information was the addition of allegations that the check was given for sixteen head of cattle and that defendant did not have sufficient credit with the bank for payment of the check.[1] Defendant objected to the filing of an amended information but the court allowed it to be filed.

Defendant argues that the original information in this case was insufficient under the decision in State v. Forsythe, Mo., 406 S.W.2d 633, to charge defendant with a crime and consequently it was not subject to amendment. Defendant is correct in contending that the original information was bad under the Forsythe case. If defendant had been convicted under that original information, such conviction could not have been permitted to stand because, as pointed out in Forsythe, § 561.-460 requires that the information allege both insufficient funds *and* lack of credit with the bank to pay the check on presentation. However, defendant is in error when he assumes that the filing of an amended information was not permissible. In State v. Starks, Mo., 419 S.W.2d 82, there was a conviction on an information found insufficient to charge an offense under the stimulant drug statute. The court, having concluded that the conviction must be reversed, considered whether the case should be remanded to permit the state to amend the information so as to allege suf-

1. On the date of trial the state first offered for filing the amended information mailed to counsel the preceding week, and then later that same morning offered a second amended information identical with the first amended information except that it had an allegation that defendant had been previously convicted. We are not concerned on this appeal with the timeliness or propriety of the additional allegation under the Second Offender Act because on the basis of the proof offered, the trial court refused to permit the case to be submitted to the jury under the Second Offender Act.

ficiently the offense it had attempted to charge in the original information. Relying on Supreme Court Rule 24.02, V.A.M.R.,[2] the court held that it would remand, saying, 419 S.W.2d 1. c. 84: "In State v. Lane, Mo., 371 S.W.2d 261, at 1. c. 264, the court quoted with approval the following pertinent language from State v. Broeder, 90 Mo.App. 156, 167–168: '"And it seems to us that when the right is given to amend, as to both form and substance, as it is in section 2481 [RSMo 1899], supra, [now section 545.290] the right can not be restricted to such defects as would be cured by the statute of jeofails, after verdict, but exists even if the information failed to state any offense, if it can be clearly gathered from what is stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute."'" The opinion in Starks, after noting that there was no question that the original information intended to charge violation of a specific statute, then said, 419 S.W.2d 1. c. 84: "The state undoubtedly could have amended the information to charge possession of amphetamine before this trial began. Substantial rights of defendant could not be prejudiced by permitting the state to do upon remand what it could have done before."[3]

The state, by adding the allegation that defendant did not have sufficient credit with the bank for payment of the check (and that the check was for sixteen head of cattle) did not charge defendant with a different or additional offense than that with which he originally was charged. It sought merely to sufficiently charge that offense. This was expressly authorized in the Starks case and by Supreme Court Rule 24.02. The action of the court in permitting the filing of the amended information was not error.

■ Defendant also claims that he should have had a continuance by reason of the late filing of the amended information. The transcript shows that the state sent notice of that proposed change to counsel during the week preceding the trial, and counsel conceded that he did receive the amendment. No prejudice to defendant resulting from the time of notice of the amendment was demonstrated. The trial court concluded that the filing should be permitted and that a continuance was not indicated. We cannot say that he abused his discretion or was wrong in making that determination. Supreme Court Rule 24.02, V.A.M.R.

■ Defendant's second contention is based on alleged prejudice of a juror, discovered after trial but raised in the motion for new trial. The pertinent facts thereon are these: On the voir dire the court asked if any of the jurors knew the defendant. Some jurors responded to that question, but juror McHaffie did not. Thereafter, in the motion for new trial defendant asserted that one of the jurors, prior to trial, had made derogatory and prejudicial remarks about the defendant, indicating ill feeling toward him. In support of these allegations, defendant presented two witnesses. Wayne Cook testified that subsequent to the trial he went to the home of juror McHaffie to buy some molasses. On that occasion he talked to McHaffie about defendant Morris and asked what they had done with him. McHaffie said they had stuck him, and went on to say that several years before Morris took a rap for his brothers and was "sent up." He indicated he had known

2. Supreme Court Rule 24.02 provides as follows: "The court may permit an information to be amended or an information to be substituted for an indictment at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

3. It also should be noted that in State v. Forsythe, supra, the case on which the defendant relies, the court did not reverse outright the judgment obtained on the fatally defective information but rather reversed and remanded the case which would permit the filing of an amended information.

Morris for many years. Francis Leone testified that he had known McHaffie five or six years and that after the trial he was in Stacey's Store at Sparta and heard McHaffie telling some man that Morris "was well known for writin' bad checks, and that some day the law'd catch up to him." The witness said that after having heard that conversation, he called Morris and told him about it. McHaffie then took the stand and testified that Wayne Cook had come to his house to buy molasses and had said something about Morris, but that he had not made the remarks concerning Morris which Cook attributed to him. With reference to the testimony of Leone, McHaffie said that he had not been in Stacey's Store since the trial and had not made the remarks attributed to him by Leone. McHaffie specifically testified that he had heard Jack Morris' name but that he did not know him and had not heard anything about him before the trial.

There was a direct conflict in the testimony of Cook and Leone, on the one hand, and McHaffie, on the other. The trial court accepted the version of McHaffie and overruled the motion for new trial. In that connection, we note that when Leone was testifying he stated that he had known McHaffie for five or six years. He then was asked whether McHaffie was in the courtroom at that time. Leone looked around and testified that he was not. Subsequently, Judge Powell noted in the record that at the time Leone was testifying, McHaffie was in fact in the courtroom sitting by himself just three or four rows back of the bar separating the public from the counsel area.

We perceive no reason for not deferring to the finding of the trial court wherein necessarily he accepted McHaffie's version of the facts. Accepting McHaffie's version as true, he was not disqualified as a juror. State v. Coleman, Mo., 460 S.W.2d 719, 725. It was not error to refuse to grant a new trial on this assignment.

■ Defendant next contends in his brief that the court committed error in failing to instruct the jury "as to any consideration said jury should give the testimony adduced on behalf of the defendant as to payment of $500.00 that had been made on the check prior to the filing of the complaint; or as to the witness Rondo Prock as a partner in the Ava Sales Company having received another insufficient fund check from defendant just a few days prior to January 11, 1966; or as to there being sufficient money in the Citizens Bank of Rogersville, Rogersville, Missouri, on February 11, 1966, to pay said check."

We find no merit in any of the foregoing contentions. With reference to the $500.00 payment which defendant mentioned, defendant's brother testified that on some date after the $1,646.37 check was given and returned unpaid, Rondo Prock (a partner in Ava Sales Company) came to defendant's farm seeking payment of the check. Defendant, according to his brother, paid Prock $500.00 in cash and said he would pay the rest when he could. This was denied by Prock. Assuming admissibility of this testimony, defendant was not entitled to an instruction singling out such testimony and instructing as to the consideration to be given it. At most, it would bear on defendant's intent to defraud and the court sufficiently instructed the jury on the subject of intent.

The same can be said with reference to the contention that defendant had given Prock another insufficient funds check a few days prior to January 11, 1966. Actually, it is not clearly established by the evidence that this even occurred. Defendant offered in evidence, as Exhibit A, a check for $1,191.13 dated January 4, 1966, given by defendant to Ava Sales Company. That check was paid on presentation on January 7, 1966. Defendant's questions of Prock inquired whether this check was given in exchange for an earlier check which was returned for insufficient funds. Rondo Prock did not remember that this was

true. Exhibit 18, a bank ledger sheet of defendant's account, shows that on December 24, 1965, a check for $1,191.13 was presented and returned for insufficient funds, but that check was not offered in evidence and Exhibit 18 does not disclose to whom the check turned down on December 24, 1965, was payable. In any event, there was no basis for defendant's claim that a specific instruction with respect to this check should have been given. Defendant says that this evidence disclosed a course of dealing which purged the transaction of its criminal nature, but we do not agree.

Defendant's claim that an instruction should have been given as to his bank balance on February 11, 1966, has reference to the fact that on that date, exactly one month after the check for $1,646.37 was given, he had a balance of $2,094.03 which exceeded the amount of the check on which defendant was prosecuted. Bank ledger sheets, Exhibits 17 and 18, show that on that one day, February 11, 1966, defendant did have a balance which exceeded the unpaid check to Ava Sales but that he did not have a sufficient balance to pay the check on any other date between January 11, 1966 (the date of the check), and February 15, 1966, the last date covered by the two ledger sheets. Again, at most, this fact could relate only to the question of intent to defraud. A special instruction thereon was not called for. It would have been improper to give an instruction calling attention to this balance on February 11, 1966, telling the jury that it indicated a lack of intent to defraud or that they should give particular attention to that balance in determining whether to convict defendant in this case.

█ Another alleged trial error relied on by defendant as a ground for reversal relates to failure of the court to declare a mistrial on account of remarks by counsel in closing argument to the jury, as follows:

"Now, put this shoe on your foot. Put yourself in Mr. Singleton's shoes.

"MR. HUFFMAN: We object to that as being improper argument, Your Honor.

"THE COURT: Yes, the objection is sustained to that type of argument.

"MR. HUFFMAN: I ask the jury to be instructed to disregard that argument and further ask that a mistrial be declared for that statement of Mr. Haden's to the jury.

"THE COURT: Request denied. The statement will be stricken and the jury will disregard it."

The court properly sustained counsel's objection and instructed the jury to disregard Mr. Haden's statement about the jury putting themselves in Mr. Singleton's shoes. Counsel was not entitled to make that argument. However, the trial court should exercise its discretion as to whether improper argument necessitates a mistrial. State v. Williams, Mo., 419 S.W.2d 49. Mistrial is a drastic remedy and we will not interfere with the court's exercise of discretion unless it was clearly abused. State v. Camper, Mo., 391 S.W.2d 926. We find no abuse of discretion here.

█ Finally, defendant complains that two attorneys not shown to be connected in any way with the Prosecuting Attorney's office of Douglas County or with the Attorney General of Missouri were permitted on behalf of the prosecution to make the opening statement, conduct the direct and cross-examination of witnesses and make the arguments to the jury. He relies primarily on State v. Bockman, Mo., 251 S.W.2d 607, in which this court refused to reverse a conviction by reason of the appearance of a special prosecutor but did observe that the court had remarked on occasion that the practice of permitting special prosecutors, while not prohibited, was not to be commended. By way of explanation, the court then went on to say, 251 S.W.2d 1. c. 609: "Special prosecutors are usually employed by private individuals solely to secure a conviction, and their zeal

and energies are bent to accomplish that end, which is not the sole purpose of a criminal prosecution. A fair and impartial trial is always best afforded a defendant when the prosecution is conducted by the State's accredited prosecutor who, no matter how vigorously he may prosecute, does not, or at least should not, under his oath, lose sight of the fact that defendant is entitled to a fair and impartial trial. State v. Moreaux, 254 Mo. 398, 162 S.W. 158." The court then went on to point out that defendant had made no complaint in the trial as to the appearance of special counsel, and that the court's attention was not directed to any conduct whereby the bounds of legitimate advocacy had been exceeded or the constitutional right of defendant to a fair and impartial trial had been transgressed. The court refused to reverse the conviction by reason of the participation of special counsel.

There are other cases in which the appearance of special counsel to assist in the prosecution has been permitted, including State v. Amsden, Mo., 299 S.W.2d 498; State v. Matthews, Mo., 111 S.W.2d 62.

In this case no objection of any kind was made by defendant to the appearance of special counsel until after final arguments to the jury had been completed and the jury had retired to commence its deliberations. As a matter of fact, during the preliminary stages of the trial, the following occurred:

"MR. TURNER: Your Honor, I would like to say one thing for the record. I am Al Turner and I am the duly elected prosecuting attorney of Wright County, and I have sought counsel of our Circuit Judge, the Honorable Garner L. Moody, as to my participation in this matter, and he has advised me that he just simply doesn't know if I am qualified or not, that he knows of no disqualification for me appearing in another county on the part of the state, so I would like leave of the Court to participate in this case since I will be appearing in behalf of the state and not under any statute that I am aware of, am I disqualified.

"THE COURT: All right.

"MR. HUFFMAN: There will be no objection by the defendant of Mr. Turner being in the case."

After the jury had retired to deliberate, the question as to participation by Messrs. Turner and Haden was first raised in the following manner:

"MR. HUFFMAN: The defendant at this time wishes to move that a mistrial be declared by the Court prior to any return of verdict by the jury for the reason that the regularly appointed and qualified and acting prosecuting attorney of Douglas County, where this offense, according to the evidence, did occur, did not participate in the trial of this case.

"He did not make any opening statement, he did not question, he did not put a witness on the stand either in direct examination or did not cross examine any witness or did not participate in the argument, and under the rules and the law of the State of Missouri, we are asking that a mistrial be declared.

"THE COURT: Well, I am not familiar with the rule that you are talking about, but I believe Mr. Mee did qualify the jury, conducted the voir dire, and I think the record should show that he was present in the courtroom during the entire trial, that he participated in all conferences, he made several objections, as I recall, and that he helped present the instructions and discussed those.

"So, under the circumstances the request will be denied."

The objection gave no reasons as to how or why defendant was prejudiced by appearance of these two attorneys. It did not complain of any improper conduct or motives on their part. It raised only the academic question of whether ones other than regular staff may assist in a prosecution. In addition, it came much too late. The trial court did not err in overruling the objection.

Judgment affirmed.

All of the Judges concur.