STATE of Missouri, Respondent,

v.

Keith UMFLEET, Appellant.

No. 9546.

Missouri Court of Appeals,
Springfield District.

May 3, 1976.

Application to Transfer Denied
Sept. 13, 1976.

**56**

Morris A. Shenker, Cordell Siegel, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Nanette Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

1. References to statutes and rules are to RSMo Supp.1973, V.A.M.S., except where otherwise noted.

2. We observe from our record that defendant was charged jointly with one Ronald Wiley. Wiley was tried in the Circuit Court of Cape Girardeau County. See *State v. Wiley*, 522

HOGAN, Judge.

A jury found Keith Umfleet guilty of two counts of possession of controlled substances in violation of § 195.020, RSMo Supp.1973.[1] His punishment was assessed at 12 years' imprisonment on count one (possession of morphine) and five years' imprisonment on count two (possession of barbiturates). The sentences have been made to run concurrently. Defendant appeals.

The sufficiency of the evidence to support the verdicts is not questioned, and a brief recitation of the facts will be sufficient.[2] On February 2, 1972, the Cape Girardeau Police Department received a "tip" from an unidentified informant advising them that the defendant, Ronald Wiley and Gary Moore had drugs stored in an apartment on North Ellis Street in Cape Girardeau. The informant further advised the police that the three men were eating, and when they finished they were going to Carbondale, Illinois, to dispose of the drugs. Having ascertained that the apartment described was occupied by Gary Moore and his wife and that the neighborhood fit the informant's description, the police acted on the information. Lt. Stover and Officer Moore of the Cape Girardeau Police Department, together with three deputies of the sheriff's office entered the apartment on North Ellis about 5:30 p. m. on February 2. Drugs were found in the refrigerator. Defendant, Wiley and Gary Moore and his wife were arrested and taken in custody. On March 10, 1972, the Prosecuting Attorney of Cape Girardeau County filed an information charging appellant and Wiley with a) "joint possession of a controlled substance, to-wit: three bottles of morphene sulphate [sic]," and b) "joint possession of a controlled substance, to-wit: 50 capsules of Fiorinal with Codeine # 1."

S.W.2d 281 (Mo. banc 1975). Appellant was tried in Stoddard County, which is in our territorial jurisdiction. Section 477.060, RSMo 1969, reenacted Laws of Mo.1973, p. 84, § 1. The opinion in *State v. Wiley*, supra, sets out the background facts more fully.

At this trial, Moore testified that he, defendant and Wiley pooled their money to buy the drugs; that he first saw the drugs in a hotel in Indiana, and that defendant was present at the time. The defendant had called a person named Joe. Joe brought the drugs to the hotel. Moore paid Joe for the drugs (three bottles of liquid and a bottle of capsules) with money which belonged to defendant, Moore and Wiley. Moore further testified that defendant had come to the Ellis Street apartment to eat and to "[t]ry to get the drugs out" to Carbondale. Moore freely admitted he was testifying as an immunity witness.

David Hill, a witness for the State, testified that he had seen the drugs at the "apartment on Ellis" "around" February 2. Defendant had told the witness the drugs were his, but "[defendant] had been busted before and he didn't want to have them [the drugs] in his house."

The defendant testified that he had gone to Moore's apartment only to eat with Moore and his wife. He had gone to Indiana with Moore but he denied any knowledge of or connection with the drugs, stating that he had not seen them before he was arrested and taken in custody at Moore's apartment. Other facts will be noticed as relevant to the issues presented.

The first point advanced here is that the trial court erred in permitting amendment of the information at the close of the State's case-in-chief. With deference to counsel, the point is asserted in such "shotgun" fashion that we have difficulty determining what his precise complaint is, but the record shows that Robert C. Briner, a forensic chemist, undertook a qualitative analysis of the three bottles of liquid and the bottle of yellow and red capsules taken from the Moore apartment. Briner testified that the three bottles of liquid were sealed, but a small quantity of material was removed from each bottle with a hypodermic needle. This material was then put on a glass plate with wells in the plate, and a testing compound called marquis reagent was added. The material from the bottles was clear; when the marquis reagent was

added the liquid turned purple. Such a reaction indicates the presence of a morphine ring. The solid material contained in the bottles was then extracted from solution and subjected to further analysis by gas and thin layer chromatography processes which were explained in some detail. The finding from this analysis was that "this material [from the three bottles] compared exactly with the standard morphine which we have in the laboratory from the Bureau of Narcotics." Briner testified that the solute found in the State's exhibits "B", "C" and "D" "would come under Schedule II . . . which indicates opium or opiate, salt, compound, salt or derivative, I believe is the way it is stated." Spectrographic and gas chromatographic analyses of the capsules revealed that they contained a mixture of codeine and isobutylallyl barbituric acid, which is a derivative of barbituric acid.

Cross-examination of this witness indicated no quantitative analysis of any of the specimens had been undertaken, and that the fluid taken from the bottles had not been analyzed to determine whether the solute was morphine as a sulfate or as another salt or derivative.

At the close of the State's case-in-chief, the prosecuting attorney asked leave to amend both counts of the information. Count one of the original information charged that "Ronald Wiley and Keith Umfleet . . . did then and there . . . have in their joint possession a controlled substance, to-wit: three bottles of morphene sulphate [sic]". Count two charged that Wiley and Umfleet "did . . . have in their joint possession a controlled substance, to-wit: 50 capsules of Fiorinal". The State was permitted to amend count one of the information to read that defendant "did . . . have in his possession a controlled substance, to-wit: three bottles of a substance containing an opium compound, to-wit: morphine". Count two was amended to read that defendant "did . . . have in his possession a controlled substance, to-wit: fifty capsules of a substance containing a quantity of a derivative of

barbituric acid". The defendant now asserts that permitting the State to amend the information deprived defendant "of his rights to be informed of the nature and cause of the accusation, confrontation of witnesses and to effective assistance of counsel, under the Sixth Amendment as applicable to the states under the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, § 18(a) of the Missouri Constitution and contrary to Mo.Rev.Stat., § 545.300 and Mo. Sup.Ct. Rule 24.02." Various arguments are advanced in support of this contention.

Rule 24.02 provides that the trial court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced, and the right to amend is not as limited as defendant seems to believe. If it can be clearly gathered from what is stated in the information that the prosecuting attorney intended to charge a particular offense or the violation of a specific statute, the information may be amended, as to both form and substance, even if the original information is insufficient to charge the defendant with a crime. *State v. Morris,* 470 S.W.2d 467, 469[2] (Mo. 1971); *State v. Starks,* 419 S.W.2d 82, 84–85[2] [3] (Mo.1967).

In our opinion the amendment did not charge the defendant with an offense different from or additional to that with which he was originally charged. The offense charged in both informations is unlawful possession of a controlled substance. Section 195.020 makes it unlawful (with certain enumerated exceptions) for any person to "possess . . . any controlled . . . substance". Both the original and amended informations charge the offense of possession of a controlled substance substantially in the language of the statute. The amendment merely specified with more particularity the charge contained in the original information. There is no showing that any defense to the original charge would not have been equally available under the amended information, and the

amendment was therefore proper. *State v. Lockhart,* 501 S.W.2d 163, 165[3] (Mo.1973).

Defendant also claims that he was prejudiced by the amendment because it came too late for him to cross-examine the forensic chemist "relative to and in light of the new charge." The record does not support this complaint. Defendant's trial counsel requested an opportunity to cross-examine Briner after the amendment and found that Briner had returned to Cape Girardeau. The State then closed its case-in-chief, and the trial court specifically afforded defendant the right to recall Briner. Defendant put on his evidence and made no attempt to recall Briner. No oral or written request for a continuance was made. In addition, defendant's trial counsel, in objecting to the amendment, pointedly stated that "I anticipated—I expected an amendment *for a long time*". (Emphasis added.) There is no basis for the assertion that defendant was prejudiced by the amendments to the information; the point is without merit.

Defendant also asserts that evidence of other crimes was erroneously admitted, to his prejudice. He admits in his brief that his objection to "most" of the testimony or remarks to which he refers were sustained, and that the jury was instructed to disregard them, but he complains that the trial court should have declared a mistrial.

Without going over all the isolated answers, or "remarks", to which this assignment of error is directed, one example is illustrative of the order of importance of this point. During direct examination, Hill was asked: "What did Keith Umfleet tell you about the drugs in Gary Moore's ice box, and further did he tell you—tell us whether or not he told you they were in the ice box." The answer was: "He had been busted before and he didn't want to leave them in his house." Trial counsel objected and asked that the jury be "instructed to disregard and the jury panel be dismissed. This man is testifying to opinions, hearsay and it is highly prejudicial and completely irrelevant to the charge against Mr. Umfleet." The trial court ruled that it would allow the witness to answer, "confining it

entirely to what the defendant said, we will let him answer as to what the defendant alone said, not what someone else said." The witness was then permitted to state that the conversation took place about "six-thirty, seven in the evening" on February 2.

It will be noted that defendant objected to the quoted unresponsive answer on the grounds of hearsay and relevancy; now he would expand his objection by asserting that Hill's answer constituted proof of a crime different and distinct from that for which he was being tried. A point raised on appeal must be based on the same theory as the objection made at the trial; a defendant may not object on trial on the ground that evidence was improperly received because it was hearsay, opinion evidence and irrelevant, and then on appeal maintain that the same testimony was prejudicial because it constituted proof of other independent crimes. *State v. Spencer,* 486 S.W.2d 433, 434[1] (Mo.1972); *State v. Johnson,* 483 S.W.2d 65, 67–68[3–5] (Mo.1972); *State v. Larkins,* 518 S.W.2d 131, 134[1] (Mo.App.1974). Examples might be multiplied, but they are of like tenor and merit. We doubt that any of the evidence or "remarks" about which defendant complains tended to establish the commission of other unrelated crimes, but if so, the real question presented is whether, as a matter of law, the trial court abused its discretion in refusing a mistrial. *State v. Smith,* 431 S.W.2d 74, 82–83 (Mo.1968). Having examined the record, we find no such abuse of discretion.

A further diffuse assignment of error is that defendant's sentence on count one is excessive and constitutes cruel and unusual punishment, that the jury should have been instructed on the "lesser included offense" of possession of a controlled substance listed in Schedule III rather than Schedule II, and that § 195.200 is unconstitutional in several enumerated respects because it provides for cruel and unusual punishment. The claim that defendant's punishment is excessive and the assignment that the statute under which defendant was convicted is violative of U.S.Const. Amend.

VIII and U.S.Const. Amend. XIV as well as Mo.Const. art. I, § 21, appears for the first time on appeal. We may not consider this assignment, because it was not presented below either upon trial or in the motion for new trial. *State v. Brownridge,* 459 S.W.2d 317, 319[4] (Mo.1970); *State v. Turnbough,* 388 S.W.2d 781, 787[9] (Mo.1965); *State v. Harms,* 507 S.W.2d 29, 31[1] (Mo.App.1974).

The assertion that the trial court should have instructed the jury on the "lesser included offense" of possession of a controlled substance listed in Schedule III, § 195.017, requires more discussion. Section 195.017, para. 6, subpara. (5)(h) includes, among other things, mixtures or preparations containing not more than 50 milligrams of morphine, or any of its salts, per 100 milliliters or per 100 grams with one or more active, nonnarcotic ingredients in recognized therapeutic amounts. Such a preparation or mixture is, or was, at the time defendant was tried, a Schedule III controlled substance. Section 195.240 prohibits possession of Schedule III controlled substances, with exceptions not here applicable, and § 195.-270 provides, in effect, that the penalty for possession of a Schedule III substance shall be imprisonment in the penitentiary for not less than two nor more than ten years, or by confinement in the county jail for a term of not more than one year, or by a fine of not more than one thousand dollars, or by both fine and confinement in the county jail.

A lesser offense is said to be "necessarily included" in a graver offense within the meaning of Rule 26.02, para. (6), and Rule 27.01, para. (c), if the greater of the two offenses includes all the legal and factual elements of the lesser, *State v. Amsden,* 299 S.W.2d 498, 503–504 (Mo.1957), and in the circumstances presented, we suppose a charge of unlawful possession of morphine in solution would necessarily include possession of a less concentrated solution. The question is whether the proof required instruction that the jury might find defendant guilty of unlawful possession of the Schedule III controlled substance described in para. 6, subpara. (5)(h) of § 195.017.

Instructions on lesser or included offenses are required only if there is evidentiary support for them. *State v. Goodman*, 490 S.W.2d 86, 88[4] (Mo.1973); *State v. Washington*, 357 S.W.2d 92, 95[8] (Mo.1962).

 The State's evidence indicated that the three bottles of solution found in the Moore apartment contained morphine. At least as the law stood when defendant was prosecuted, the State was not required to prove the concentration of the morphine per unit of volume. *State v. Young*, 427 S.W.2d 510, 513[2–6] (Mo.1968). Cross-examination of the forensic chemist did establish that no quantitative analysis of the three bottles of morphine solution had been made, but neither the State's evidence nor that of the defendant indicated that the three bottles of morphine sulfate contained "[n]ot more than 50 milligrams of morphine . . . per 100 milliliters . . . with one or more active, nonnarcotic ingredients in recognized therapeutic amounts." Since there is no proof in the record that defendant was guilty of the lesser or included offense of possession of a Schedule III controlled substance, the court was not required to instruct the jury that they might find the defendant guilty of that offense.

Defendant also asserts that his Fourth Amendment rights were infringed by the search and seizure made without a search warrant on February 2, 1972. He seems to assume that the merits of this appeal are necessarily governed by the decision of our Supreme Court in *State v. Wiley*, 522 S.W.2d 281 (Mo. banc 1975). We do not know that this is true as a matter of law; no part of the record in *State v. Wiley*, supra, was ever before this court, and ordinarily we cannot notice proceedings in another and different court, *England v. Eckley*, 330 S.W.2d 738, 744[4] (Mo. banc 1959), unless the record of those proceedings is put in evidence. *Layton v. State*, 500 S.W.2d 267, 269[5] (Mo.App.1973). Upon severance, this case became a separate case, see *State v. Castino*, 264 S.W.2d 372, 375 (Mo.1954), and therefore the decision in *State v. Wiley*, supra, governs this appeal only if Wiley's appeal involved identical subject matter and questions of law, because defendant was not a party to that appeal. 5B C.J.S. *Appeal & Error* § 1833, at 210 (1958). We shall not pursue the matter, for the point is not briefed here, and by our rules, must be considered abandoned, Rule 28.02, even though counsel may not wish his brief to have that effect.

No prejudicial error appears. The judgment is therefore affirmed.

All concur, except BILLINGS, J., who took no part in the consideration or decision of this case