368 So.2d 528 (1979)
In re Guy SPARKS, Attorney at Law
v.
Robert M. PARKER, Presiding Judge, 7th Circuit, State of Alabama.
Ex parte Guy Sparks and the Calhoun County, Alabama, Bar Association, etc., Petitioners.
77-667, 77-687.
Supreme Court of Alabama.
February 9, 1979.
Rehearing Denied March 9, 1979.
*529 Guy Sparks, Richard B. Emerson, Anniston, for Calhoun County Bar Association, petitioners.
William J. Baxley, Atty. Gen. and Rosa G. Hamlett, Asst. Atty. Gen., for respondent, opposed.
William H. Morrow, Jr., Montgomery, Gen. Counsel for Alabama State Bar, amicus curiae.
BLOODWORTH, Justice.
Petitioners appellants seek a writ of mandamus requiring Judge Robert M. Parker, Presiding Judge of the Seventh Judicial Circuit, to vacate, modify or set aside his order of December 27, 1977, establishing an indigent defense system for the circuit and requiring him to vacate his order of June 28, 1978, denying appellants' motion to vacate the original order, or, in the alternative, an appeal of the June 28, 1978, order denying the motion to vacate the original order.
Pursuant to §§ 15-12-2 and 15-12-3, Code of 1975, the order of December 27, 1977, was entered by Judge Parker with the advice and consent of the Indigent Defense Commission of the Seventh Judicial Circuit of Alabama and after consultation with the Indigent Defense Committee of the Calhoun County Bar Association. Under the indigent defense system instituted by the court, it was ordered that the "team system" be utilized for indigent felony appointments. Fifty-two eligible Calhoun County attorneys were appointed to four teams, each team consisting of thirteen attorneys and each team being eligible for appointment during three months of each year. In misdemeanor and juvenile cases, the order provided that attorneys would be appointed alphabetically.
In essence, appellants are challenging the orders establishing the indigent defense system in Calhoun County, seeking to have this *530 Court determine that § 15-12-21 through § 15-12-23, Code of 1975, are unconstitutional. They argue that by compelling the service of court appointed attorneys for the compensation provided by these sections, these provisions of Alabama law are unconstitutional. (Sections 15-12-21 through 15-12-23 are attached as Appendix A.)
The first issue is whether mandamus or appeal is proper. We conclude that the proper procedure for review of the order below is appeal. Judge Parker issued the December 1977 order to fulfill a clear legal duty imposed upon him by §§ 15-12-2 and 15-12-3 to establish and administer an indigent defense system. Although mandamus will lie where there has been an abuse of discretion to compel the proper exercise thereof [Foshee v. State, 210 Ala. 155, 97 So. 565 (1923), Ex parte Morrow, 259 Ala. 250, 66 So.2d 130 (1953), East v. Todd, 284 Ala. 495, 226 So.2d 153 (1969)], the system established under the December order appears on its face to be fair and reasonable and cannot be characterized as arbitrary or capricious. Therefore, since the order was made within the statutory authority and within the judge's discretion, mandamus will not lie but appeal is the proper remedy.
The second issue is whether the constitutional rights of indigent defendants to adequate representation are infringed by Judge Parker's order establishing an indigent defense system as authorized by the laws of this state. In presenting this claim, appellants assert that if attorneys are underpaid, they cannot satisfactorily perform the constitutional guarantee of right to counsel. However, no facts or data are shown in the record in support of this contention. Moreover, Judge Parker indicated in his June 28, 1978, order that the trial court "has not observed any great disparity between appointed and retained counsel" and notes that "[t]he same attorneys that are appointed are also the ones that are retained." Addressing a similar contention, the New Jersey court made the following observations in State v. Rush, 46 N.J. 399, 405-407, 217 A.2d 441, 444-445 (1966):
"As to the right of an accused, appellant contends that counsel, if unpaid, cannot by his performance satisfy the constitutional guarantee of the right to the aid of counsel. We know of no data to support a claim that an assigned attorney fails or shirks in the least the full measure of an attorney's obligation to a client. Our own experience, both at the bar and on the bench, runs the other way. A lawyer needs no motivation beyond his sense of duty and his pride.

"Nor can it be said that assigned counsel are less qualified than counsel privately retained. As in other callings, some men acquire reputations for excellence. In numbers they are few, and sometimes it is not clear why fortune has chosen them alone. It is understandable that a defendant will seek a lawyer of wide repute if he can afford him, but of course the Constitution does not assure every man, indigent or not, that only a leader of the bar will speak for him. Even the State cannot command such representation; most criminal cases are prosecuted by young men who have yet to be acclaimed but who are not in the least unequal to their responsibility on that account. Nor does preeminence at the bar necessarily bespeak special experience in criminal matters. In the State courts, criminal work is not too rewarding financially. Very few specialize in that area, and overall the well known lawyers have had but sporadic exposure to it.
"Nor is prior experience in criminal matters essential. The law is a vast field and no man is in command of all of it. Lawyers, as do judges, move from scene to scene absorbing the special features of each. A capacity to that end goes to the essence of the practice of law. A lawyer's training equips him for it, and his every experience sharpens that skill. And although a new scene may demand a greater initial effort, the newcomer may well bring a zeal and a freshness long lost to a tired or comfortable expert.
"Moreover, few cases really turn upon the skill of the advocate. The facts and the applicable law are quite compelling, *531 and a lawyer who has both on his side will do well against anyone. No doubt a small number of cases are lost through lack of skill or poor preparation, but while the legal profession, like all others, suffers to a degree from the inept and the indolent, the phenomenon cannot be said to be related to a system of assignment of counsel. Further, illogical though it may be, judges tend to have a larger sense of responsibility for the performance of lawyers they assign than for the performance of counsel privately retained, and to the extent that this is true, there may be an advantage for the indigent accused."
We are in full accord with these views. In that case, although the New Jersey Supreme Court determined for policy reasons that members of the bar would not be required to discharge the state's obligation to provide indigent defendants with counsel, the New Jersey court did not find their system of assignment unconstitutional, holding, viz:
"We are satisfied our system of assignment yields representation equal to that obtained by defendants who retain their own counsel. This is not to say that another approach would not be more desirable. Rather our point is that what we have meets the constitutional demand, and to recur to the precise point counsel here seeks to make, we are satisfied that our assignment system does not fall short because assigned counsel are unpaid." (Footnote omitted.) (Emphasis supplied.)
The third issue raised is whether the indigent defense system violates the constitutional rights of counsel appointed to defend indigents accused of crimes in that it contravenes Amendment 328(6.10) of the Alabama Constitution, requires the provision of services without just compensation [Ala. Const., Art. I, §§ 6, 13, 23; U.S.Const., 5th and 14th Amendments], compels involuntary servitude [Ala.Const., Art. I, § 32; U.S. Const., 13th Amendment], and violates constitutional guarantees of equal protection [U.S.Const., 14th Amendment].
We now proceed to discuss these issues. Appellants contend that the indigent defense system contravenes Amendment 328(6.10) of the Alabama Constitution of 1901 which states in part:
"Adequate and reasonable financing for the entire unified judicial system shall be provided. Adequate and reasonable appropriations shall be made by the legislature for the entire unified judicial system, exclusive of probate and municipal courts."
Appellants argue that because the legislature has not provided the "adequate and reasonable financing" specified, attorneys should therefore be relieved of the duty to provide representation for indigent defendants. In Morgan County Commission v. Powell, 292 Ala. 300, 293 So.2d 830 (1974), this Court reiterated the principle of the separation of powers of government into three branches with separate functions, holding:
"Within their respective spheres each branch of government is supreme. State v. Stone, 224 Ala. 234, 139 So. 328. Judicial power and legislative power are coordinate, and neither can encroach upon the other. Ex parte Huguley Water System, et al., 282 Ala. 633, 213 So.2d 799. The authority to determine the amount of appropriations necessary for the performance of the essential functions of government is vested fully and exclusively in the legislature. Abramson v. Hard, 229 Ala. 2, 155 So. 590. Section 72, Alabama Constitution of 1901, provides: `No money shall be paid out of the treasury except upon appropriation made by law * * *'"
It is therefore not within the sphere of the judicial branch to determine what appropriations are to be made although, of course, it would be within our purview to determine if the appropriations made are "adequate and reasonable" for the unified judicial system or so inadequate as to constitute the taking of property (services) without due process of law in the context of this case. We do not find such to be the case on this appeal.
*532 Turning now to the other constitutional claims advanced by appellants concerning the rights of appointed counsel under the system set up by Judge Parker's order, it is helpful to examine briefly the history of the obligation of the attorney to represent indigents upon order of the court.
Representation of indigents upon court order is an ancient tradition of the legal profession, dating back to the fifteenth century in England and to pre-Revolutionary America. Counsel appointed to represent indigents have often received nothing for their services and have rarely received more than statutory fees which seldom adequately compensate a lawyer for even his expenditure of time, much less the value of his professional skill and attention.
In England, the obligation of the lawyer to serve upon court assignment apparently developed as a matter of common law. It was not until 1695 that there developed a statutory recognition of this obligation when a statute was passed requiring the courts to appoint counsel upon the request of a person accused of treason. 7 and 8 W.3, c.3, §.1 (1695).
In colonial America, however, there appears to have been a more extensive statutory recognition of the obligation of counsel to represent indigents upon court order. Several statutes were passed requiring the assignment of counsel upon request of accused persons unable to retain counsel; these statutes presupposed the existence of an obligation on the part of attorneys to serve when assigned. Thus, a Pennsylvania statute of 1718 provides for assignment of counsel in a large number of capital crimes. 3 Statutes at Large of Pennsylvania 1712-1724, pp. 199, 201 (Busch, 1896). See Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, 45 n. 1, 24 A.2d 1, 3 n. 1 (1942). A Delaware statute of 1709 and a South Carolina statute of 1731 provided for assignment of counsel in the case of any capital offensea category which included many more offenses than it does today. See Beaney, Right to Counsel in American Courts 16-17 (1955).
After the Revolutionary War, there was additional statutory, as well as common law, recognition that counsel might be ordered to represent indigent accused persons. A New Jersey statute of 1795 required the courts in all cases of indictment to assign counsel to persons not able to procure counsel. See Beaney, op. cit. supra at 18-22. Finally, federal statutory recognition of the obligation of counsel to serve when assigned came in 1790, when, following the English act a hundred years before, Congress passed a statute requiring assignment of counsel at the request of any person accused of treason or other capital crime. 1 Stat. 118 (1790).
In addition to the ancient common law and statutory recognition of the obligation of attorneys to serve indigents, for a limited and often inadequate compensation, the great majority of courts which have passed on the question have denied claims of appointed counsel for nonstatutory just compensation, reaffirming the principle that representation of indigents under a court order without fee is a traditional obligation of the bar and therefore a condition under which lawyers are licensed to practice as officers of the court. See Posey & Tompkins v. Mobile County, 50 Ala. 6 (1873) and 21 ALR 3d 819.
Therefore, although the statutory compensation which exists in most states usually contains limitations which in most cases prevent a lawyer from receiving what his time is worth, constitutional standards of just compensation have generally been found inapplicable. A Fifth Amendment "taking" of property does not occur when the state simply requires an individual to fulfill a commitment he has made. Kunhardt & Co. v. United States, 266 U.S. 537, 45 S.Ct. 158, 69 L.Ed. 428 (1925); Hurtado v. United States, 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973). An applicant for admission to practice law may rightfully be deemed to be cognizant of the traditions of the profession which he is joining, and to know that one of these traditions is that a lawyer is an officer of the court obligated to represent indigents for little or no compensation upon court order.
*533 In Powell v. Alabama, 287 U.S. 45, 53, 53 S.Ct. 55, 65, 77 L.Ed. 158, 172 (1932), the United States Supreme Court found that attorneys were obligated to accept compulsory appointments to defend indigent defendants, stating:
"Attorneys are officers of the court, and are bound to render service when required by such appointment."
Reinforcing this view of the lawyer's obligation to represent indigent defendants is the unique position of the Alabama Bar Association and the Board of Bar Commissioners as this Court pointed out in Wright v. Turner, 351 So.2d 1, 4 (Ala.1977):
"Members of the Board of Bar Commissioners do have some functions which derive directly from legislative enactments. See Tit. 46, § 25, Code of Alabama 1940. It is clear, however, from the terms of the Code that their duties are, for the most part, dependent upon Supreme Court approval.
"This dependency was underscored in the opinion authored for the Court by Justice Shores in Board of Commissioners, Alabama State Bar v. State ex rel. Baxley, 295 Ala. 100, 109, 324 So.2d 256, 262 (1975): `Although the Board (of Bar Commissioners) was created by the legislature, it was created as an arm to this court and any action by the Board is subject to review or approval by this court. The legislature has not created an entity which is not subject to control or regulation, the Board is subject to the control of this court."
As an "arm of the court" the Board of Bar Commissioners, and consequently the members of the Alabama State Bar as well, enjoy certain state privileges. Although the members of the Board receive neither salary nor emolument by virtue of their membership on the Board, they do receive reimbursement of actual expenses from the state and the members of the state bar benefit from the services so provided. A concomitant obligation upon the bar of this state is to furnish legal services to indigents at the statutory compensation provided in order to enable the state to discharge its duty to provide adequate representation for indigent defendants imposed upon the state by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 733 (1963); U. S. v. Wade, 338 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (juveniles).
While the furnishing of services without just compensation might not be demanded of a citizen who is not an officer of the court or who does not enjoy special privileges from the state or who is not otherwise required to fulfill a commitment to the state, members of the Alabama Bar are in a unique position and, for this reason, are obligated to render their services for limited compensation.
Having traced some of the historical obligation of the attorney to represent indigents and having examined the unique position of the Alabama State Bar due to privileges enjoyed from the state, we now proceed to consider the four cases on which appellant places heavy reliance, namely: State ex rel. Partain v. Oakley, 227 S.E.2d 314 (W.Va.1976); State v. Green, 470 S.W.2d 471 (Mo.1971); State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966); and Smith v. State, 394 A.2d 834 (N.H.1978).
At the outset we note that in none of the first three cases did the highest appellate courts of either West Virginia, Missouri, or New Jersey hold that the asserted constitutional rights had been violated. Instead, in each instance, for policy considerations, the courts ordered that, effective approximately one year from the date of each opinion, attorneys should be relieved of the duty of accepting compulsory appointments to represent *534 indigents if the respective state legislatures failed to provide assistance either by providing public defenders or by providing additional compensation. In Smith, the New Hampshire Supreme Court (in an opinion authored by Justice Grimes) specifically held that the people of New Hampshire decided that the burden of paying the cost of indigent defense should be borne by the people as witnessed by their adoption of the constitutional provision which provides in pertinent part, viz:
". . . Every person held to answer in any crime or offense punishable by deprivation of liberty shall have the right to counsel at the expense of the state if need is shown . . . ."
The constitutional convention's history of that provision shows it was adopted to place the cost on the State and to relieve the attorney of his historical obligation.
Moreover, in the instant case, there is insufficient evidence of record to reach a result similar to the courts' decisions in Oakley, Rush, and Green.
In State ex rel. Partain v. Oakley, for example, much more evidence was furnished the West Virginia court concerning the burden imposed on the attorneys of that state. The West Virginia Bar Association supplied data descriptive of the caseload per lawyer by appointment in the various circuits of that state. The West Virginia court, based on that information, found that those attorneys were not suffering an oppressive loss of income by virtue of their representation of indigents but, because the situation was rapidly approaching such a state, the court stated that an order would subsequently be entered relieving attorneys from their duty to represent indigents.
Comparable information to that on which the West Virginia court based its policy decision is not of record in the present case. The record contains only affidavits of Calhoun County attorneys, most of which state only the percentage of time each attorney spent on indigent cases making no reference to caseload or actual hours worked on such cases.
This Court appreciates and is most sensitive to the plight of the attorneys of Calhoun County, shared by their brother and sister attorneys throughout the state, and finds that the failure of the legislature to provide adequate funds to compensate attorneys to the extent of the true value of their services is unjustifiable. Nevertheless, the statutes in question do not infringe upon the constitutional rights of appellants for the reasons we have given and the June 28, 1978, order denying appellants' motion to vacate, modify or set aside the order establishing the circuit's indigent defense system is affirmed.
MANDAMUS DENIED. APPEAL AFFIRMED.
All the Justices concur.

On Rehearing
APPLICATION FOR REHEARING OVERRULED.
TORBERT, C. J., and BLOODWORTH, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
MADDOX and FAULKNER, JJ., dissent.
MADDOX, Justice (dissenting).
After further reflection, I am convinced the majority opinion is wrong. I hereby withdraw my concurrence with it.
The majority's opinion is premised upon the erroneous concept "that representation of indigents under a court order without fee is a traditional obligation of the Bar and therefore a condition under which lawyers are licensed to practice as officers of the court." There may be an "obligation of attorneys to serve indigents," but, at most, it is only a moral obligation, not a legal one, unless the attorney is directed to perform such services by a court. If so directed, however, are attorneys required to serve without compensation? I think not. In any event, several attorneys have challenged the statement that they agreed to perform services free of charge as a condition of their licensure. They are now joined by the Alabama State Bar. The *535 Alabama State Bar, in an amicus curiae brief in support of the application for rehearing, states:
"As was stated in the case of County of Dane v. Smith, [13 Wis.585] Supreme Court of Wisconsin (1861), `We do not believe that the legislature have the power generally to say to the physician, the surgeon, the lawyer, the farmer, or anyone else, that he shall render this or that services, or perform this or that act in the line of his profession or business without remuneration.'"
I agree. Can the state appropriate the services of a physician, a surgeon, a farmer or anyone else, without compensation? The answer is obviously in the negative. Neither should attorneys be forced to perform services as a public defender without just compensation.
I would grant rehearing.
FAULKNER, J., concurs.

APPENDIX A
§ 15-12-21. Appointment and compensation of counselTrial court.
(a) If it appears to the trial court that such defendant is entitled to counsel, that such defendant does not expressly waive the right to assistance of counsel and that such defendant is not able financially or otherwise to obtain the assistance of counsel, the court shall appoint counsel to represent and assist the defendant; and it shall be the duty of such appointed counsel, as an officer of the court and as a member of the bar, to represent and assist said defendant.
(b) Counsel appointed in such cases shall be entitled to receive for their services a fee to be fixed by the trial court. The amount of such fee shall be based on the number of hours spent by the attorney in working on such case and shall be computed at the rate of $20.00 per hour for time expended in court and $10.00 per hour for the time reasonably expended out of court in the preparation of such case. Such counsel shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense. The total fees and expenses to any one attorney in any one case, including fees for services rendered in preliminary hearing and in ancillary proceedings, shall not, however, exceed $500.00.
(c) Within a reasonable time after the conclusion of the trial or ruling on a motion for a new trial or after an acquittal or other judgment disposing of the case, counsel shall submit to the trial court a bill for services rendered, not to exceed the amount provided in subsection (b) of this section, and such bill, if approved by the trial court, shall be submitted by the clerk of the court to the state comptroller for audit and allowance and, if approved by the comptroller, shall be forwarded to the state treasurer for payment. (Acts 1963, No. 526, p. 1136, §§ 2, 3; Acts 1971, No. 2420, p. 3851.)
§ 15-12-22. SameAppeals.
(a) In all criminal cases wherein a defendant has been convicted of a serious offense in which an appeal lies directly to the supreme court or court of criminal appeals and the defendant expresses his desire to appeal such conviction, the court shall cause to be entered upon its minutes a recital of notice of appeal, and the court shall then ascertain and make findings in reference to the appeal concerning those items listed in section 15-12-20.
(b) If it appears that the defendant desires to appeal and is unable financially or otherwise to obtain the assistance of counsel on appeal and the defendant expresses the desire for assistance of counsel, the trial court shall appoint counsel to represent and assist the defendant on appeal. The presiding judge of the court to which the appeal is taken shall have authority to appoint counsel in the event the trial court fails to appoint and in the event it becomes necessary to further provide for counsel. It shall be the duty of such counsel, as an officer of the court and as a member of the bar, to represent and assist such defendant in the appeal.
(c) Counsel appointed for the appeal shall be entitled to receive for their services a fee *536 to be fixed by the appellate court. The amount of such fee shall be based on the number of hours spent by the counsel in working on such appeal and be computed at the rate of $20.00 per hour for time expended in court and $10.00 per hour for time reasonably expended out of court in the preparation of such appeal. Such counsel shall also be entitled to be reimbursed for any expenses reasonably incurred in preparing and handling such appeal. The total fees and expenses awarded to any one attorney in any one case, including fees on the trial of the case in the lower court, on the appeal and in any ancillary proceedings, shall not, however, exceed $1,000.00.
(d) Within a reasonable time after the disposition of the appeal, counsel shall submit to the appellate court a bill for services rendered, not to exceed the amount provided in subsection (c) of this section, and such bill, when approved by the presiding judge or chief justice of the appellate court, shall be submitted by the clerk of the appellate court to the state comptroller for audit and allowance and, if approved by the comptroller, forwarded to the state treasurer for payment. (Acts 1963, No. 526, p. 1136, §§ 4, 5; Acts 1971, No. 2420, p. 3851.)
§ 15-12-23. SamePostconviction proceedings.
(a) In proceedings filed in the district or circuit court involving the life and liberty of those charged with or convicted of serious criminal offenses, including proceedings for habeas corpus and coram nobis or other postconviction remedies, and in appeals, post-trial motions in such proceedings, the trial or presiding judge or chief justice of the court in which such proceedings may be commenced or pending may appoint counsel to represent and assist those persons so charged or convicted if it appears to the court that the person charged or convicted is unable financially or otherwise to obtain the assistance of counsel and desires the assistance of counsel and it further appears that counsel is necessary in the opinion of such judge to assert or protect the rights of such person.
(b) It shall be the duty of such counsel as provided in subsection (a) of this section to represent and assist the person in such proceeding.
(c) The counsel appointed in such proceedings shall be entitled to receive for his services a fee to be fixed by the judge appointing him. The amount of such fee shall be based on the number of hours spent by counsel in working on such proceedings and be computed at the rate of $20.00 per hour for time expended in court and $10.00 per hour for time reasonably expended in preparation of such proceedings; provided, that the total amount of compensation to counsel for such proceedings shall not exceed $300.00, nor shall the total amount awarded to any one attorney for any one case, including fees on the trial of the case in the lower court, on the appeal and in any ancillary proceedings, exceed $1,000.00.
(d) Claim for such fee shall be submitted, approved and paid in the same manner as provided in subsection (d) of section 15-12-22. (Acts 1963, No. 526, p. 1136, § 7; Acts 1971, No. 2420, p. 3851.)